IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TRUCKSTOP.NET, L.L.C., | ) | |
| | ) | Case No. CV-05-138-S-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **DECISION AND ORDER** |
| | ) | |
| SPRINT CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## I.    INTRODUCTION

The Court has before it Defendant's motion to dismiss and Plaintiff's motion for determination of privilege.  With regard to Defendant's motion, the Court concludes that the Defendant Sprint Corporation did have minimum contacts with the State of Idaho necessary to establish personal jurisdiction.  The Court further concludes that Idaho law is applicable and that, under Idaho law, Plaintiff Truckstop.net ("TSN") has stated a claim upon which relief can be granted.  The Court will therefore deny Defendant Sprint Corporation's motion to dismiss.

**Memorandum Decision and Order Page 1**

The Court will grant TSN's motion for determination of privilege with respect to a memorandum written by Sprint Corporation in-house counsel Amy Cline, finding that the memo contained privileged information but that Sprint Communications employee Darrell Judkins waived that privilege by providing TSN with the memorandum.

## II.   DEFENDANT SPRINT CORPORATION'S MOTIONS TO DISMISS

### A.   Facts and Procedural History

TSN is a company that provides internet access through access points known as "hot spots."  In order to set up such access points at truck stops, TSN signed a "Custom Service Agreement" with Sprint Communications in 2003.  Under the agreement, Sprint Communications was to provide for, test, and install local networks for TSN to use in providing internet access at truck stops.  By October of 2004, disputes arose over this contract, with TSN claiming Sprint Communications had failed to perform its obligations under the contract and Sprint Communications claiming TSN had failed to make payments.  These disputes between TSN and Sprint Communications are the subject of a separate contract-based lawsuit, which TSN filed against Sprint Communications on November 15, 2004.

In addition to its contract suit against Sprint Communications, TSN filed this action against Sprint Corporation asserting a claim of tortious interference. Sprint

**Memorandum Decision and Order Page 2**

Communications is a wholly-owned subsidiary of Sprint Corporation.   TSN claims

that Sprint Corporation was aware that Sprint Communications did not provide the

optimal service it had promised to TSN under the terms of the agreement.   TSN

further claims that Sprint Corporation encouraged or directed Sprint

Communications to refuse to take steps to resolve continuing problems with the

wireless networks.   This interference, TSN claims, resulted in Sprint

Communication's breaching its contract with TSN, which resulted in damages to

TSN's business and reputation.

In response to TSN's claims, Sprint Corporation has filed this motion to

dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).   Sprint

Corporation claims that it does not have minimum contacts with the State of Idaho

and is not subject to Idaho personal jurisdiction.   Sprint Corporation also claims

that, even if it were subject to Idaho personal jurisdiction, TSN's suit should be

dismissed for failure to state a claim upon which relief can be granted.

**B.    Analysis**

**1.    Defendant's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

Sprint Corporation first argues that it is not subject to personal jurisdiction in

Idaho and that the complaint should be dismissed pursuant to Federal Rule of Civil

Procedure 12(b)(2).  In diversity actions, the assertion of personal jurisdiction must

comply with the requirements of Idaho's long-arm statute (I.C. §5-514(a)) and

must not offend due process. *See Lake v. Lake,* 817 F.2d 1416, 1420 (9th Cir.

1987).  Because Idaho's statute allows a broader application of personal

jurisdiction than the Due Process Clause, courts must look only to the Due Process

Clause to determine if personal jurisdiction is appropriate.[1]

     In establishing personal jurisdiction consistent with due process, the Plaintiff

bears the burden of demonstrating that the forum state has jurisdiction over the

Defendant.  *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 (9th Cir. 1993).  However,

since no evidentiary hearing has been held on the jurisdictional issue, TSN must

only make a prima facie showing of personal jurisdiction to overcome a motion to

---

[1]In *Lake*, the 9th Circuit found that the Idaho legislature, in adopting I.C. § 5-514, "intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution." *Id*. at 1420.  The Idaho Supreme Court had so held, and continued to so hold for a few years after *Lake*.  *See Houghland Farms v. Johnson*, 803 P.2d 978 (Idaho 1990). But more recently, the Idaho Supreme Court has, without commenting on this precedent, instituted a two-part test for resolving long-arm jurisdiction questions.  The Court first looks at whether the defendant's conduct falls within the terms of the statute, and then looks to see whether exercising jurisdiction would comport with the Due Process Clause.  In two cases, the Idaho Supreme Court has held that the defendant's conduct did fall within I.C. § 5-514, but that jurisdiction could not be exercised consistently with the Due Process Clause.  *See Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997); *Saint Alphonsus v. State of Washington*, 852 P.2d 491 (Idaho 1993).  These decisions imply that I.C. § 5-514 reaches beyond the limits of due process, and that the Idaho Supreme Court must use the Due Process Clause to rein-in the statute's grasp.  Thus, *Lake's* reading of I.C. § 5-514 appears no longer to be accurate.  The result, however, is the same--the Due Process Clause sets the limit, but the Idaho Supreme Court's new two-part test recognizes that the reach of the statute is not identical with the reach of the Due Process Clause.

**Memorandum Decision and Order Page 4**

dismiss. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995).

TSN may make such a showing based on either general or specific personal jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc. Inc*., 557 F.2d 1280, 1287 (9th Cir. 1977). Since Sprint Corporation lacks the "continuous and systematic," or "substantial" activities in the forum state needed for general personal jurisdiction[2], TSN attempts to establish specific personal jurisdiction over Sprint Corporation. *Id.*

In order for the plaintiff to show that a forum state has specific personal jurisdiction over the defendant, minimum contacts must exist between the defendant and the state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Ninth Circuit applies a three-part test to establish minimum contacts. *Doe v. American Nat. Red Cross,* 112 F.3d 1048, 1051 (9th Cir. 1997). First, the defendant must purposefully avail itself of the privilege of conducting activities in the forum state. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131 (9th Cir. 2003). The first element of this test is

---

[2]Although Sprint Communications L.P. provides communication services throughout the country, Sprint Corporation is primarily a holding company and is based in Overland Park, Kansas. It does not have any employees in Idaho, nor does it conduct business in Idaho.

**Memorandum Decision and Order Page 5**

satisfied if the defendant is alleged to have committed an intentional act expressly aimed at the forum state causing harm, the brunt of which is suffered - and which the defendant knows is likely to be suffered - in the forum state. *Id.* The second element necessary to prove minimum contacts is that the claim arises out of or relates to the defendant's forum-related activities. For this, the Ninth Circuit uses a "but for," or "effects" test, whereby if the alleged injury would not have happened in the forum state but for the defendant's forum-related actions, jurisdiction is appropriate. *Id* at 1132. Third, and finally, the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Id.* If the plaintiff successfully demonstrates that jurisdiction is appropriate based on the first two parts of this test, the defendant must present a "compelling case" if it is to show that personal jurisdiction in a given forum is unreasonable. *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 477 (1985).[3]

It appears that TSN has satisfied the first part of the Ninth Circuit's three-part test for minimum contacts by alleging that Sprint Corporation engaged in an

---

[3]The Ninth Circuit considers seven factors in determining what constitutes a "compelling case" for such purposes: (1) the extent of the defendant's purposeful interjection into the forum state's affairs, (2) the burden on the defendant of defending in the forum state, (3) the extent of conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Rutsky*, 328 F.3d at 1132.

**Memorandum Decision and Order Page 6**

intentional tortious act, by directing or encouraging Sprint Communications to

shirk its obligations to TSN.  It is alleged that this act was calculated to affect the

contract between Sprint Communications and TSN.  Since TSN's principal place

of business is in Idaho[4], this act allegedly harmed an Idaho business.  Because

Sprint Corporation was aware that TSN was an Idaho business likely to be affected

by any potential breach of contract, Sprint Corporation knowingly directed its

activities at the forum state of Idaho.

Sprint Corporation also satisfies the second component of the Ninth

Circuit's three-part test for minimum contacts in that the claim arises out of

Sprint's forum related activities.  If, as TSN claims, Sprint Corporation directed or

encouraged its subsidiary to take action to terminate or breach its contract with

TSN, then TSN's tortious interference claims against Sprint Corporation arise

directly from that action and are a logical result of Sprint Corporation's alleged

interference.[5]

_____

[4]TSN is a Delaware limited liability corporation with its principal place of business in New Plymouth, Idaho.

[5]Sprint Corporation cites persuasive authority from Illinois for the proposition that economic injury within a forum state is not, by itself, sufficient to confer personal jurisdiction: "an economic loss which is felt in Illinois is not sufficient to confer jurisdiction in Illinois courts when the allegedly tortious act occurred outside of Illinois."  *Talbert & Mallon, P.C v. Stokes Towing Co.*, 572 N.E. 1214, 1216 (Ill. 1991)  The instant case, unlike *Talbert & Mallon*, involves not only economic injury resulting from alleged torts outside the forum state, but injury resulting from actions directed at the forum state.  The plaintiff's complaint in *Talbert* "merely

Since Sprint Corporation satisfies the first two elements of the Ninth

Circuit's minimum contacts test, the burden shifts to Sprint Corporation to make a

compelling case that the exercise of Idaho personal jurisdiction would be

unreasonable.  *Id.*  None of the factors the Ninth Circuit identifies in determining

reasonableness weigh strongly in favor of Sprint Corporation here, and a number

of them weigh against it.  Although it would appear that Sprint Corporation's

involvement in Idaho's affairs may be minimal, that is largely a factual question

which is, as yet, undetermined.  Sprint Corporation has not shown any particular

burden it will face in litigating this case in Idaho, other than the burden any litigant

faces in defending or pursuing a case outside of its home state.  Moreover, Idaho's

interest in protecting its citizens from tortious acts, concerns of judicial efficiency,

and the fact that Idaho's assertion of jurisdiction does not threaten the sovereignty

of Kansas, weigh in favor of Idaho asserting jurisdiction over Sprint Corporation.

Finally, neither the importance of the forum to the Plaintiff's interest nor the

existence of any possible alternative forum weigh heavily in Sprint Corporation's

---

allege[d] that Plaintiff suffered economic loss in Illinois."  *Id.*  In contrast, TSN's complaint
alleges that TSN suffered economic loss because of tortious activity specifically directed at the
forum state.  Whereas economic injury is not enough to confer jurisdiction, it is enough when
that injury is directed at the forum state.  This holding is consistent with the Ninth Circuit's
three-part test for minimum contacts, *See eg*, *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements
Ltd.*, 328 F.3d 1122, 1131. (Holing that the purposeful availment prong of the Ninth Circuit's
minimum contacts test may be met when the defendant intentionally directs activities into the
forum state.)

**Memorandum Decision and Order Page 8**

favor.

Since TSN has showed that Sprint Corporation meets the first two parts of the Ninth Circuit's three-part test for minimum contacts, and since Sprint Corporation is unable to make a compelling case that Idaho's assertion of personal jurisdiction is unreasonable, Sprint Corporation's motion to dismiss for lack of personal jurisdiction will be denied.

**2.      Defendant's 12(b)(6) Motion to Dismiss for Failure to State a Claim**

Sprint Corporation also seeks dismissal of TSN's tortious interference claims under Rule 12(b)(6).   In examining diversity claims, federal courts musts apply the choice of law principles of the state in which they sit. *Klaxon Co v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  In Idaho, the choice of law for tort claims is determined by the "most significant relation test."  *Grover v. Isom*, 53 P.3d 821, 823-24 (Idaho 2002).  Under the test, courts must consider (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship between the parties is centered.  *Id.*  The Idaho Supreme Court has held that of these four factors, the most important in determining choice of law is the place where the

injury occurred.  *Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82, 85 (Idaho 1995).

In the instant case, the tortious injury in question occurred at TSN's headquarters in Idaho.  Although Sprint Corporation's actions in allegedly persuading Sprint Communications to not perform its contract with TSN may well have occurred in the corporate headquarters in Kansas, the injury resulting from those communications was experienced by TSN at its headquarters in Idaho. Because the injury took place in Idaho and because none of the other four factors in the most significant relationship test bear strongly in favor of any other state,[6] the application of Idaho law is appropriate.

In applying Idaho law to Defendant's motion for dismissal in this case, the Court must construe the record in the light most favorable to the non-moving party. *Miles v. Idaho Power Co.*, 778 P.2d 757, 759 (Idaho 1989).   A claim of tortious interference involves four elements:  (1) the existence of a contract, (2) knowledge of the contract on the part of the defendant, (3) intentional interference causing a

---

[6]The residences and places of business of the parties do not bear strongly in favor or against Idaho personal jurisdiction because Plaintiff TSN does business in Idaho, while Defendant Sprint Corporation does so in Kansas.  Although Sprint Corporation asserts that the alleged tortious interference "no doubt took place at Sprint Corporation's headquarters located in Kansas," it offers no firm evidence to support this.  Even if it did so, that fact would not outweigh the significance of the fact that the injury took place in Idaho.

breach of contract, and (4) injury to the plaintiff resulting from the breach. *Ostrander v. Farm Bureau Mut. Ins. Co.*, 851 P.2d 946, 950 (Idaho 1993).

A contract existed between Sprint Communications and TSN, satisfying the first prong of this test.  By allegedly encouraging or directing Sprint Communications to act in a given way, Sprint Corporation necessarily would have knowledge of the contract between Sprint Communications and TSN, satisfying the second prong of the test.  Such interference, which is clearly alleged by TSN, would satisfy the third prong and the damages alleged resulting from it would satisfy the fourth.  Viewing the pleadings and available facts in the light most favorable to TSN, it appears that TSN has successfully stated a valid claim of tortious interference.   It remains to be seen, of course, whether TSN will be able to present sufficient facts supporting that claim to avoid summary judgment or succeed at trial.

Sprint Corporation offers an affirmative defense to this claim, arguing that even if the four elements of tortious interference are present, Sprint Corporation was entitled by law to make such an interference.  In making this affirmative defense, Sprint Corporation argues that it either has the privilege to interfere in Sprint Communications' contracts as a parent company or that it cannot be said to interfere by law because it was a party to the contract.

**Memorandum Decision and Order Page 11**

Idaho law remains somewhat unsettled in determining privilege to interfere in contracts. In fact, the Idaho Supreme Court has commented that this area of the law "has not crystallized a complete set of definite rules as to the existence or non-existence of privilege." *Barlow v. International Harvester Co.*, 522 P.2d 1102, 1114 (Idaho 1974). The Idaho Supreme Court has determined that once the plaintiff establishes a prima facie case for the four elements of tortious interference, the burden shifts to the defendant to establish that such interference is justified. *Id.* This question, as the Idaho Supreme Court noted in *Barlow*, is largely fact-dependent and usually left for the jury to determine. *Id.* As the Idaho Supreme Court emphasized, "[w]hat is unwarranted interference depends on the facts of each case." *Id.*

Due to the fact-dependent nature of this inquiry under Idaho law, the Court cannot adopt the rule Sprint Corporation has cited from other jurisdictions that a parent company, by law, has the right to interfere in the contracts of its wholly-owned subsidiaries. See, eg., *Waste Conversion Systems, Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779 (Tennessee 2000). Nor does the Court adopt the suggestion of TSN counsel that Sprint Corporation necessarily must answer to tortious interference claim because it is a separate legal entity from Sprint Communications. As cases cited by both sides stress, if a subsidiary is merely an

**Memorandum Decision and Order Page 12**

"adjunct, instrumentality, or alter ego" of its parent, claims of tortious interference against the parent may be inappropriate because a party to a contract may not be held liable for interference with that same contract.  *Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1126 (11th Cir. 1993).  If Sprint Corporation is able to demonstrate that it was the same company as Sprint Communications, or that Sprint Communications was merely an "adjunct, instrumentality, or alter ego," such claims of tortious interference would be subject to dismissal, either by summary judgment or at trial.[7]  However, from the pleadings and affidavits available, the Court holds that these questions may not be resolved at this stage in the proceeding.

## III.   PLAINTIFF TRUCKSTOP NETWORK'S MOTION FOR DECLARATION OF PRIVILEGE

### A.   Facts and Procedural History

The Court also has before it Plaintiff TSN's motion to determine that a memorandum written by Sprint in-house attorney Amy Cline is not protected by attorney-client privilege.  On October 4, 2004, Sprint Corporation in-house attorney Amy Cline sent a memorandum (hereinafter the "Cline memo") to

---

[7]It would seem unlikely that Sprint Corporation would assert such a claim, since it would be tantamount to conceding that it has not recognized the separate existence of its wholly-owned subsidiaries.  This would invite a piercing of the corporate veil and result in unacceptable collateral consequences.

Deborah Neal, copying it to Darrell Judkins.  The memorandum contained legal advice as well as possible business strategies for Sprint as it decided how to proceed with its contract with TSN.  At the top of the memo, Ms. Cline attached the heading "ATTORNEY-CLIENT PRIVILEGED INFORMATION FOR INTERNAL USE ONLY."

On October 7, 2004, at 8:58 pm, Eastern Standard Time, Darrell Judkins forwarded this memo to TSN via email.  He did so using his personal email account.  Mr. Judkins worked for Sprint Communications as an enterprise account executive at the time he sent the memo to TSN.  As such, his responsibilities included "overall account management," as well as "initial and ongoing sales and marketing support."  Mr. Judkins served as TSN's main point of contact with Sprint.  Although he forwarded the Cline memo to TSN intentionally, it appears that he did so without the knowledge or consent of his supervisors or Ms. Cline. Nothing in the record demonstrates that Mr. Judkins had experienced any significant ill will towards his employer, Sprint Communications, or that he sent the email with the express purpose of harming Sprint.  However, shortly after emailing the Cline memo to TSN Mr. Judkins was fired from his position at Sprint Communications.

On November 18, 2004, TSN's counsel wrote Sprint Corporation's counsel

**Memorandum Decision and Order Page 14**

notifying them of TSN's receipt of the Cline memo.  TSN's counsel noted that "portions of the [Cline memo] may have been subject to the attorney-client privilege."  TSN continued, "the intentional disclosure of the letter to TSN arguably waived that privilege."  TSN's counsel then offered Sprint Corporation an opportunity to state its position with respect to the Cline memo and stated that TSN would not disclose the information contained therein for the time being.  On that day, Sprint Corporation's counsel assured TSN that they would "get back" to them regarding this issue.

On January 5, 2005 Sprint Corporation's counsel sent a response to TSN via fax regarding the Cline memo, including a letter dated November 19, 2004 indicating that Sprint Corporation considered the memo to be attorney-client privileged information and stating that Sprint Corporation believed the memo to be given to TSN inadvertently.  TSN replied two days later that it believed the memo to have been provided intentionally, inviting Sprint to reconsider its position.  On May 13, 2005, TSN filed a motion for determination of privilege, arguing that the Court should determine that the Cline memo is not covered by attorney-client privilege or that any such privilege was waived.

B.    ANALYSIS

In diversity actions, questions of privilege are controlled by state law.  See

Fed. R. Evid 501.  Although Rule 501 dictates that state law shall apply in such actions, it does not specify how courts are to determine which state's law is to apply.  The Ninth Circuit has identified three possible approaches in answering this question: (1) assume that the state "which supplies the rule of decision" is the state which also supplies the privilege of law; (2) apply the privilege rules of the state in which the federal court sits; or (3) apply the conflict of law doctrine of the state in which the federal court sits.  *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987).

Under the first two approaches, Idaho law applies.  Idaho is the state supplying the rule of decision and is the state where the federal court sits.  The third approach involves application of Idaho's conflict of law doctrine.  In resolving conflict of law issues, Idaho favors applying the "most significant relation test" suggested by the Restatement (Second) of Conflict of Laws. *Seubert Excavators, Inc., v. Anderson Logging Co.* 889 P.2d 82, 85 (9th Cir. 1995)  For purposes of determining privilege, § 139 provides that a communication not privileged under the law of the forum state will be admitted into evidence, even if it is privileged under law of the state with the most significant relationship, unless "there is some special reason why the forum policy favoring admission should not be given effect."  Restatement (Second) of Conflict of Laws § 139(2) (1971).

**Memorandum Decision and Order Page 16**

Since Sprint Corporation has not suggested any special reason why Idaho law

should not be given effect, the Cline memo is admissible if it is not privileged

under Idaho law, regardless of how the memo would be treated under Kansas law.[8]

Our inquiry thus begins and ends with the Idaho law of privilege.

Under Idaho law, the burden of establishing the privileged character of such

communications rests on the party wishing to withhold the document as privileged.

*Ex parte Niday*, 98 P. 845, 846-47 (Idaho 1908).  Although the Cline memo

contained information which was clearly business-related, the primary purpose of

the memo was to provide legal advice to Sprint.  In the memo, Ms. Cline outlined

various legal options which were available to Sprint at the time relating to its

contract with TSN.  In providing advice regarding such options, Ms. Cline

inevitably touched upon business choices available to Sprint.  The fact that she did

so does not vitiate the central purpose of the memo – to provide legal advice to her

client.  Moreover, the fact that Ms. Cline included the header "ATTORNEY-

CLIENT PRIVILEGED INFORMATION FOR INTERNAL USE ONLY"

---

[8]  Section 139 favors the admissibility of documents which would be admissible in one jurisdiction but inadmissible in another. For example, in the reverse situation – i.e., where Idaho law would treat the memo as privileged, but Kansas law would deem it admissible – § 139(1) directs that it be admitted unless, "the admission of such evidence would be contrary to the strong public policy of the forum."  Restatement (Second) of Conflict of Laws § 139(1) (1971). Since the Court concludes that the Cline memo is not privileged under Idaho law, it is unnecessary to consider the effect of § 139(1) in this case.

**Memorandum Decision and Order Page 17**

demonstrates that this information was understood by Sprint Corporation and Amy Cline to be subject to attorney-client privilege.

TSN cites persuasive authority for the rule that "where a lawyer mixes legal and business advice the communication is not privileged unless the communication is designed to meet problems which can fairly be characterized as predominantly legal." *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988). Even if the Court were to apply this rule, it would not change the privileged nature of the Cline memo, since its primary purpose was clearly legal. Where business decisions were to be made, Ms. Cline suggested that other departments at Sprint be contacted to help make those decisions. As Sprint Corporation's counsel notes "[Ms. Cline] was simply doing what lawyers do: advising her client as to the risks associated with a particular course of action."

The Court next reaches the question of whether Sprint Corporation waived the attorney-client privilege. Under Idaho law, the holder of privileged information waives that privilege when it "voluntarily discloses or consents to disclosure of any significant part of the matter or communication." Idaho R. Evid. 510.[9] Case law on this point is scant and there appears to be no existing mandatory

---

[9]Kansas law governing waiver of attorney-client privilege is similar to Idaho law and the result remains the same regardless of which law applies. Under Kansas law, any holder of attorney-client privilege has waived that privilege when that person "without coercion, or without trickery, deception, or fraud practiced against him or her, and with knowledge of the

authority addressing the issue of an employee's waiver of the attorney-client privilege held by the corporation for which he or she works in cases such as this one.

TSN points to two cases – both persuasive authority – to support its contention that Mr. Judkins both had the authority to waive attorney-client privilege and did in fact waive it.  In *Denney v. Jenkens & Gilchrist*, 362 F.Supp.2d 407 (S.D.N.Y. 2004), the district court  held that the partner of a defendant accounting firm had the authority to waive any attorney-client privilege that attached to a memorandum to outside counsel regarding tax shelters.  In *Jonathan Corp. v. Prime Computer, Inc*., 114 F.R.D. 693 (E.D. Va. 1987), the district court held that the defendant's marketing representative, by voluntarily disclosing a memorandum to a customer during the ordinary course of business negotiations stemming from a contract dispute, waived any attorney-client privilege which the defendant may have had in the memorandum.

These cases suggest that Mr. Judkins had the authority to waive the attorney-client privilege that attached to the Cline memo.  Moreover, the Supreme Court in *Upjohn* rejected a narrow "control group" test under which only a small group of management officials can be subject to attorney-client privilege.  *Upjohn v. United*

privilege, made a disclosure of any part of the matter or consented to such a disclosure made by anyone."  Kansas Stat. Ann. § 60-437.

**Memorandum Decision and Order Page 19**

*States*, 449 U.S. 383, 396 (1981). In that case, the Court acknowledged that the attorney-client privilege may extend to cover confidential legal communications between a corporation's attorneys and its employees at all levels. *Id.* In *Jonathan*, the Virginia court applied *Upjohn* to hold that "a corporation cannot enjoy the benefits of an expanded attorney-client privilege without likewise accepting the consequences that the privilege may well be waived by an employee who is outside of the 'control group.'" *Jonathan*, 114 F.R.D. 693.

Applying this reasoning to the instant case, the Court determines that Mr. Judkins had the authority to waive Sprint Corporation's attorney-client privilege, which attached to the Cline memo. The memo containing the heading "ATTORNEY-CLIENT PRIVILEGED INFORMATION FOR INTERNAL USE ONLY" was intentionally copied to Mr. Judkins, who was the designated point of contact between Sprint Communications and TSN. This indicates that Sprint Corporation intended to take advantage of "an expanded attorney-client privilege" by including Judkins in Ms. Cline's confidential communication. Sprint Corporation's description of Judkins as a low-level Sprint Communications employee without the authority to waive attorney client privilege is unpersuasive given Ms. Cline's inclusion of Mr. Judkins in the memo. If Mr. Judkins had been a low-level employee without the authority to waive attorney client privilege, he

**Memorandum Decision and Order Page 20**

would not have been receiving such privileged memoranda.  As was the case in *Jonathan*, Sprint Corporation "both intentionally put the individual in a position to make the disclosure as well as gave him the information to disclose."  *Jonathan*, 114 F.R.D. at 700.

Because Mr. Judkins possessed the authority to waive Sprint Corporation's attorney-client privilege, his voluntary transmission of the Cline memo acts as the Corporation's voluntary transmission.  Accordingly, any argument that the transmission was inadvertent on the part of Sprint Corporation necessarily fails, as does the argument that Mr. Judkins, rather than Sprint, supplied TSN with the memo.

Sprint's argument that Mr. Judkins failed to waive the attorney-client privilege because he sent the Cline memo from his personal email account after normal business hours also fails.  To support this argument, Sprint Corporation cites *Jonathan* for the proposition that a waiver of privilege must occur during the "normal course of business."  *Jonathan*, 114. F.R.D. at 700.  Although Mr. Judkins sent this email at 8:58 Eastern Standard Time, he was, at the time, in the Central Time Zone and therefore sending the email just before 8:00pm.  Moreover, he was sending the email in response to a message received from TSN less than an hour earlier.  The fact that Mr. Judkins sent the message from his personal email account

**Memorandum Decision and Order Page 21**

might suggest that this was not during the normal course of business, but does not necessarily indicate that this was the case.  Given that the burden is on Sprint Corporation to establish the privileged nature of the Cline memo, these facts are not enough to overcome the effect of Mr. Judkins' voluntary transmission of the Cline memo to TSN.

Sprint Corporation finally argues that it took appropriate steps to retrieve the privileged information once it had been divulged to TSN.  Sprint argues that it took "deliberate action" to reclaim the privileged information.  The Ninth Circuit has held that when privileged information is disclosed involuntarily, the privilege will be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter." *United States v. de la Jara*., 973 F.2d 746, 750 (9th Cir. 1992).  The record does not support any assertion that Sprint pursued all reasonable means of preserving the confidentiality of the Cline memo. It certainly did not act aggressively and promptly when first advised that TSN had in its possession a document which had the hallmarks of a privileged communication.  However, even if Sprint could show that it had taken reasonable steps to preserve the confidentiality of the memo, the privilege would still be waived since the disclosure to TSN was intentional rather than inadvertent.

ORDER

**Memorandum Decision and Order Page 22**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Defendant's motion to dismiss in CV05-138S is DENIED.

IT IS FURTHER ORDERED THAT Plaintiff's motion for determination of privilege is GRANTED.

DATED:  **July 28, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court